***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the alleged injury that is the subject of this claim is December 17, 2001.
2. At the time of the alleged accident, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
3. At the time of the alleged accident, an employer-employee relationship existed between plaintiff-employee and defendant-employer.
4. At the time of the alleged accident, defendant-employer employed three or more employees.
5. Defendant-Employer is insured by American Home Assurance/AIG Claim Services.
6. Plaintiff's average weekly wage will be determined from an Industrial Commission Form 22 with the stipulation that each party be allowed to submit Contentions as to whether the average weekly wage calculated pursuant to the Industrial Commission Form 22 should be supplemented with additional amounts paid by the employer as benefits.
7. Employment records for plaintiff from March Furniture Company and Admiral Employment Specialists were received into evidence and made a part of the record after the hearing before the deputy commissioner.
8. The deposition testimony of William A. Somers, M.D., was received into evidence and made a part of the record after the hearing before the deputy commissioner.
 ***********
Based upon all the competent evidence of record, the Full Commission makes the following
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 32 years old. In the six years prior to the hearing before the deputy commissioner, plaintiff held over 25 different jobs including positions as a service technician, groundskeeper, tow truck driver, order puller, laborer, machine operator, and tire changer. Plaintiff worked at these positions, on average, a few weeks or months each and there were periods of time during which the plaintiff was unemployed. In the two years prior to the hearing, plaintiff had earned from $6.50 to $10.00 per hour in these various positions.
2. Plaintiff was hired by defendants, J.C. Penney Construction Company, in October 2001 for a temporary job as a laborer. Plaintiff understood that his employment would be limited in duration and would entail upfitting a department store. Once the store was completed, plaintiff's position was to end.
3. Plaintiff received a check from defendants for the wages he earned during his employment. Pursuant to the Industrial Commission Form 22, plaintiff's average weekly wage was $316.40. Defendants also paid a separate check to the plaintiff's union to pay for medical and retirement benefits for plaintiff. There is no evidence that these work benefits were paid in lieu of wages to plaintiff or that they were paid as part of a contract between defendants and plaintiff.
4. Any amount paid to the union to provide benefits to the plaintiff is not to be included as part of the plaintiff's average weekly wage. Plaintiff's average weekly wage as of the date of the accident was $316.40.
5. On December 11, 2001, while lifting an object, plaintiff felt pain in his low back. Plaintiff continued to work and received no medical treatment as a result of this incident.
6. On December 17, 2001, plaintiff suffered a specific traumatic incident when he felt pain in his back and left leg while removing a clothes rack from a truck.
7. Plaintiff received medical treatment on December 17, 2001 at PrimeCare Medical Center in Greensboro, North Carolina, which was closer to his residence than Durham, North Carolina, the site of his job. Plaintiff was diagnosed with a lumbo-sacral sprain and received conservative treatment over the next several weeks. Plaintiff continued to work for Defendants earning his same or greater wages.
8. On January 8, 2002, plaintiff was treated by Kevin Lavery, a physician's assistant to Dr. William A. Somers, an orthopedist. There were no objective findings during the examination, but Mr. Lavery ordered an MRI to rule out a herniated disc. The MRI was normal.
9. Mr. Lavery imposed work restrictions upon plaintiff, which were accommodated by defendants. Plaintiff cleaned dust and debris from baseboards and operated a service elevator. These positions did not constitute "make work" for plaintiff and had been held by other employees. Plaintiff received the same wages as he was earning at the time of the accident.
10. On January 22, 2002, plaintiff and approximately ten other workers were let go by defendants due to nearing the completion of the job. Plaintiff was not let go due to his restrictions or injury.
11. On February 5, 2002, plaintiff was seen by Dr. Somers who evaluated the plaintiff and did not recommend surgery. Dr. Somers diagnosed deconditioning following a back strain and anticipated that plaintiff would recover within six weeks of the visit. Dr. Somers imposed temporary light-duty restrictions, but anticipated that by the end of March 2002, plaintiff would be able to do just about anything he wanted. Dr. Somers did not want to treat plaintiff after the visit and suggested that the plaintiff see a neurologist or a pain clinic for an evaluation.
12. Plaintiff remained out of work from January 23, 2002 through April 1, 2002. This time out of work was in keeping with the pattern of plaintiff's employment history prior to the accident. There is no evidence to suggest that plaintiff was incapable of earning the same wages he earned at the time of the accident during this time out of work.
13. On April 1, 2002, plaintiff applied for a position as an upholsterer with March Furniture Company. The company specifically questioned plaintiff as to whether he would be able to lift objects and stand on his feet all day and he indicated that this would not be a problem. Plaintiff began working as an upholsterer for March Furniture Company on April 2, 2002 earning $7.00 per hour or $280.00 per week. This decrease in plaintiff's wages from the wages he earned at the time of the accident was not due to the December 17, 2002 accident. Plaintiff's wages would have increased after a 90-day training period if he had continued with that employer.
14. Plaintiff indicated at the hearing before the deputy commissioner that he did not receive any additional medical treatment for his back after February 5, 2002, as he could not afford to see a physician. This testimony is not accepted as credible. During his employment with March Furniture Company, plaintiff received medical treatment on at least two occasions for reasons unrelated to his back. In light of this evidence, the undersigned finds that plaintiff could have obtained medical treatment for his back had he been experiencing pain and difficulties. Any testimony of plaintiff that he experienced pain or difficulties after February 5, 2002 is given little weight. Plaintiff did not require medical treatment after February 5, 2002.
15. Plaintiff voluntarily quit his position at March Furniture Company on May 8, 2002 in order to assist a family member with a medical condition. Plaintiff's resignation was not related to the December 17, 2001 accident.
16. Plaintiff remained out of work from May 9, 2002 through July 8, 2002. During this period of time, plaintiff signed up for truck driving school, but did not complete the course due to the school's bankruptcy. Plaintiff's failure to earn wages during this period of time was not related to the December 17, 2001 accident and plaintiff was capable of earning the same wages as he was earning at the time of the accident.
17. On July 9, 2002, plaintiff was placed in a position by a temporary agency, Admiral Employment Specialists, to work packing batteries at Eveready. Eveready paid $8.75 per hour or $350.00 per week for plaintiff's services and Admiral Employment Specialists paid the plaintiff $7.00 per hour. Any slight decrease in wages earned by the plaintiff while at Eveready was not due to the December 17, 2001 accident and plaintiff was capable of earning the same wages he earned at the time of the accident. Had the plaintiff been working directly for Eveready in the packing position instead of working for a temporary agency, he would have earned $13.65 per hour or $546.00 per week.
18. On August 19, 2002, Eveready increased the amount paid for plaintiff's services to $9.06 per hour or $362.40 per week and in turn Admiral Employment Specialists increased the amount paid to Plaintiff to $7.25 per hour. Any slight decrease in wages earned by plaintiff during his position with Admiral Employment Specialist/Eveready is not due to the December 17, 2000 accident. Plaintiff continued working at Eveready through September 9, 2002 when he was terminated from this position for reasons unrelated to the accident.
19. As of the date of the hearing before the deputy commissioner, plaintiff was seeking employment through a temporary agency.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following
 CONCLUSIONS OF LAW
1. Plaintiff has the burden of proving that his condition and disability were caused by an injury by accident arising out of and in the course and scope of his employment. N.C. Gen. Stat. § 97-2(6). Plaintiff sustained a specific traumatic incident on December 17, 2001. N.C. Gen. Stat. § 97-2(6). However, in order to receive disability benefits, plaintiff must prove an incapacity, because of injury, to earn wages in the same or other employment in order to be entitled to compensation. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682
(1982). When addressing disability, the focus is on the employee's capacity to earn wages rather than employee's actual wages. Saums v.Raleigh Community Hospital, 124 N.C. App. 219, 476 S.E.2d 372 (1996). In light of the plaintiff's employment history over the years, his return to work for the employer after the accident and his ability to work for two different companies after the accident, plaintiff has failed to prove a loss of wage earning capacity caused by the accident. Although, for certain periods of time after the accident, plaintiff may have earned wages lower than those he earned at the time of the accident, any reduction in the post-injury wages was not due to the accident. Plaintiff is not entitled to any temporary total or temporary partial disability benefits.
2. As a result of the December 17, 2001 accident, plaintiff sustained 0% permanent partial disability and is not entitled to compensation for permanent impairment. N.C. Gen. Stat. § 97-31.
3. Plaintiff is entitled to reasonable and necessary medical treatment related to the December 17, 2001 accident. N.C. Gen. Stat. § 97-25. Plaintiff's last medical treatment was on February 5, 2002 and thereafter plaintiff had the opportunity to see a physician, but chose not to do so. In light of this decision and plaintiff's ability to work after February 5, 2002, there is insufficient competent evidence that additional medical treatment is necessary to effect a cure, provide relief or lessen the period of disability. Defendants shall be responsible for payment of any medical expenses incurred by plaintiff related to his specific traumatic incident through February 5, 2002 and no further.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for workers' compensation benefits and medical expenses is hereby DENIED.
2. Each side shall pay its own costs.
This the 8th day of September 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER